Case 4:12-cv-00674-A Document 39 Filed 05/30/13 Page 1 of 8 PageID 329

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 3 0 2013
CLERK, U.S. DISTRICT COURT
By_____
         Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FARHIA HAIBE GOHE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-674-A |
| | § | |
| LEIGHTON ILES, Director, | § | |
| Community Supervision and | § | |
| Corrections Department | § | |
| Tarrant County, Texas, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM OPINION
and
ORDER

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Farhia Haibe Gohe, a state court probationer, against Leighton Iles, Director of Community Supervision and Corrections Department of Tarrant County, Texas, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be dismissed on exhaustion grounds.

I. Factual and Procedural History

On March 31, 2010, a jury found petitioner guilty of retaliation in the 371st District Court of Tarrant County, Texas, and assessed her punishment at three years' confinement, with a recommendation that the sentence be suspended. The trial court

placed petitioner on community supervision for five years and assessed a fine, which was also suspended, and court costs. (Resp't App. at 2)

The appellate court set forth the factual background of the case as follows:

> Gohe received two traffic tickets on July 6, 2008, in Dalworthington Gardens, Texas. The tickets were for failure to maintain financial responsibility (no proof of insurance) and for not having a front headlight. According to the testimony of the city clerk, Sandra Ma, Gohe appeared at the Dalworthington Gardens's court office on July 14, 2008, and presented an insurance policy with an effective date of July 7, 2008. Ma said that after Gohe presented her July 7, 2008 insurance policy, Gohe refused to sign an affidavit saying that the policy that Gohe was giving the court was true and correct. Gohe returned on July 18, 2008, and requested to go before Judge Suzanne Hudson. Ma set a court date for Gohe to appear on August 20, 2008.
>
> By Ma's account, Gohe appeared on August 20, but Gohe became agitated with Judge Hudson and refused to give a direct answer regarding whether she was pleading guilty, no contest, or not guilty. Ma testified that Judge Hudson warned Gohe that she would be held in contempt of court if her behavior continued. Judge Hudson granted Gohe "a pass to September 3[,] 2008, to have an attorney hired." On September 3, without an attorney, Gohe's behavior "was the same, and the [j]udge had to remind [Gohe again] that she could be held in contempt if she did not follow court decorum." Judge Hudson again granted Gohe an extension, and ordered Gohe to return October 1, 2008. Gohe returned on October 1, 2008, without an attorney. On October 15, 2008, Gohe was given another pass to hire an attorney. Gohe's uncooperative behavior continued, and she was "given a last pass to have an attorney hired by November [5, 2008]." Ma testified that Gohe's demeanor

2

throughout her calls to the clerk's office was "very argumentative [and v]ery hostile." Gohe did not appear in court on November 5, 2008. Thereafter, according to Ma, "warrants were issued for [Gohe's] arrest." According to Ma, she received a phone call on November 13, 2008, concerning Judge Hudson's safety, prompting her to call Judge Hudson about a potential threat.

Judge Hudson also testified at trial. She averred that she had seen Gohe in court multiple times and that, similarly to Ma's testimony, Gohe's behavior was argumentative and angry. Judge Hudson said that Gohe, while in the courtroom, "would sigh and make noises and roll her eyes." At one point Gohe "had some papers in her hands and was so loud that [the court's] bailiff had to [instruct Gohe] to be quiet a few times." Overall, Judge Hudson described Gohe's conduct as "rude and [Gohe] didn't appear to try to behave the way people do in public or in a court setting. She was not respectful of the other people in court or of myself." At some point, Judge Hudson told Ma that she was "afraid and . . . uncomfortable being up there at the bench without one of the bailiffs being up there when [Gohe] was up at the bench."

Jamal Qaddura, a legal assistant for a local attorney, also testified. According to Qaddura, Gohe came into his office on November 13, 2008, seeking legal representation in connection with the two traffic tickets. While Gohe was still in the office, Qaddura called the court's clerk and discovered that Gohe had two active warrants. When Qaddura informed Gohe of the warrants, Gohe became very angry. Gohe's response to learning of the warrants was "How dare the [j]udge do this to me." In fact, by Qaddura's account, Gohe was so angry she started to move about the office, demonstratively using her hands in an "offensive manner." Qaddura attempted to calm Gohe down, but Gohe remained "really angry . . . [and she could not] even hold herself [calmly] while" Qaddura talked to her.

At some point in the conversation, Gohe told Qaddura that she was "going to take matters in her own hands" and

3

that she was "not afraid to go to jail." Qaddura said that Gohe then told Qaddura that she was "going to go take care of this judge." Qaddura said that he interpreted Gohe's comments to mean that she was intent on "harming the [j]udge." Because of Gohe's behavior and because Gohe left the office "angry," Qaddura called the court clerk and informed her that he believed that Gohe intended to assault Judge Hudson.

(Resp't App. at 7-9)

Petitioner appealed her conviction, challenging the legal and factual sufficiency of the evidence, but the Second Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused her petition for discretionary review. (Id. at 6-14) Gohe v. State, No. 02-10-131-CR, 2011 WL 1435158 (Tex. App.-Fort Worth Apr. 14, 2011) (not designated for publication); PDR No. 749-11, Texas Courts Online - Court of Criminal Appeals (Sept. 21, 2011), available at http:// www.cca.courts.state.tx.us.

Petitioner filed a state habeas application under Texas Code of Criminal Procedure article 11.072, entitled "Procedure in Community Supervision Case," challenging her conviction on one or more of the grounds she now raises, which was denied by the trial court on December 14, 2012. (Resp't App. at 48) TEX. CODE CRIM. PROC. ANN. art. 11.072 (West 2005). Petitioner did not appeal the order denying habeas relief. Id. § 8. This federal habeas

4

petition followed. Respondent asserts the petition should be dismissed on exhaustion grounds or, in the alternative, denied on the merits. (Resp't 4-15)

## II. Issues

Petitioner's grounds for relief are construed as follows:

(1) The trial court withheld evidence favorable to the defense, including police reports and witness statements;

(2) She received ineffective assistance of counsel;

(3) She was wrongfully imprisoned; and

(4) There was no DNA evidence establishing her guilt beyond a reasonable doubt.

(Pet. at 6-7)

## III. Exhaustion of State Court Remedies

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1), (c); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999). Section 2254(b) and (c) provide in pertinent part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
> (A) the applicant has exhausted the remedies available in the courts of the State; or

5

>            (B)(i) there is an absence of available
>        State corrective process; or
>            (ii) circumstances exist that render
>        such process ineffective to protect the
>        rights of the applicant.
>    . . .
>    (c) An applicant shall not be deemed to have
> exhausted the remedies available in the courts of the
> State, within the meaning of this section, if he has
> the right under the law of the State to raise, by any
> available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The exhaustion requirement is designed to "protect the state court's role in the enforcement of federal law and prevent the disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518 (1982). In order to exhaust, a petitioner must "fairly present" all of his or her claims to the highest state court for review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Richardson v. Procunier*, 762 F.2d 429, 430-31 (5th Cir. 1985). In Texas, the Texas Court of Criminal Appeals is the highest criminal court in the state. *Richardson*, 762 F.2d at 431.

A habeas corpus petitioner, who has been granted community supervision, may satisfy the exhaustion requirement by presenting both the factual and legal substance of his or her claims to the state trial court in an application for a writ of habeas corpus under article 11.072. TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8.

6

In the event the state district court denies the habeas petition, the petitioner has a right to appeal to the Texas appellate courts and to petition the Texas Court of Criminal Appeals for discretionary review. *Ex parte Villanueva,* 252 S.W.3d 391, 395-96 (Tex. Crim. App. 2008) (discussing filing, disposition and appeals of article 11.072 writs).

In the present case, petitioner did not raise the four claims presented in this federal petition on direct appeal from the judgment of conviction; thus it was necessary that she use the procedure provided in article 11.072 for purposes of exhausting her state court remedies. Clearly, petitioner failed to exhaust remedies that were available to her by failing to appeal the trial court's order denying state habeas relief. Because there has been no fair presentation of her claims to the Texas Court of Criminal Appeals, petitioner's claims are unexhausted.

Under article 11.072 § 9, petitioner would likely be barred by application of the abuse of the writ rule by any successive effort to exhaust state court remedies. As a result, these claims are barred from consideration by this court under the procedural default doctrine. *Nobles v. Johnson,* 127 F.3d 409,

7

423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse of the writ doctrine if raised in a successive state habeas petition, to be procedurally barred).

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed for failure to exhaust state court remedies, as required by 28 U.S.C. § 2254(b)(1).

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not demonstrated that she has exhausted her state court remedies, or circumstances rendering the state remedies ineffective, or made a substantial showing of the denial of a constitutional right.

SIGNED May 30, 2013.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

8